Joseph R. Saveri (State Bar No. 130064)
*jsaveri@lchb.com*
Michael W. Sobol (State Bar No. 194857)
*msobol@lchb.com*
Eric B. Fastiff (State Bar No. 182260)
*efastiff@lchb.com*
LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA  94111-3339
Telephone:   (415) 956-1000
Facsimile:   (415) 956-1008

Samuel D. Heins
*sheins@heinsmills.com*
Vincent J. Esades
*vesades@heinsmills.com*
Scott W. Carlson
*scarlson@heinsmills.com*
Katherine T. Kelly
*kkelly@heinsmills.com*
HEINS MILLS & OLSON, P.L.C.
310 Clifton Avenue
Minneapolis, MN  55403
Telephone:  (612) 338-4605

*Attorneys for Individual and Representative Plaintiff
Carl Phillips*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARL PHILLIPS, individually, and on behalf of all others similarly situated,<br><br>            Plaintiff,<br><br>v.<br><br>SEARS, ROEBUCK AND COMPANY; DEERE & COMPANY; TECUMSEH PRODUCTS COMPANY; PLATINUM EQUITY, LLC; BRIGGS & STRATTON CORPORATION; KAWASAKI MOTORS CORP. USA.; MTD PRODUCTS INC; THE TORO COMPANY; AMERICAN HONDA MOTOR COMPANY, INC.; ELECTROLUX HOME PRODUCTS, INC.; HUSQVARNA OUTDOOR PRODUCTS, INC.; and THE KOHLER COMPANY,<br><br>            Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

1    Plaintiff, by his undersigned counsel, on behalf of himself and a Class of those

2  similarly situated, bring this action against Defendants and alleges based upon personal

3  knowledge of the allegations pertaining to himself, and upon information, belief, and the

4  investigation of counsel as to all other allegations.

5  **I.    NATURE OF THE CASE**

6    1.    For more than a decade, Defendants have lied to consumers by overstating

7  the horsepower of lawn mower engines. In advertising and selling their lawn mowers and lawn

8  mower engines, Defendants have defrauded the public by: 1) misrepresenting and significantly

9  overstating the horsepower produced by such products; 2) concealing, suppressing and failing to

10  disclose material information, including the true, significantly lower horsepower of Defendants'

11  products; and 3) falsely advertising and selling lawn mowers at different prices containing

12  identical engines that produce the same horsepower as different products with different

13  horsepower labels or ratings—higher prices for falsely represented higher horsepower—while

14  concealing, suppressing and failing to disclose material information, including the facts that the

15  engines are identical and the true, significantly lower horsepower of the lawn mowers. Plaintiff

16  asserts claims for violations of the California Business and Professions Code, the California

17  Consumers Legal Remedies Act, as well as common law unjust enrichment and conspiracy.

18  Defendants have agreed and conspired among themselves to misrepresent and conceal material

19  facts concerning the horsepower of other Defendants' lawn mowers and lawn mower engines,

20  while misrepresenting, significantly overstating and concealing the true horsepower of

21  Defendants' own lawn mowers and lawn mower engines.

22    2.    Plaintiff brings this action on behalf of himself and a Class of similarly

23  situated consumers who purchased lawn mowers with engines sold or manufactured by

24  Defendants.  Plaintiff, for himself and for the Class, seeks compensatory damages for the injuries

25  caused by Defendants' unlawful conduct, such additional monetary relief as allowed under the

26  statutory consumer and common laws of California, punitive damages, injunctive and other

27  equitable relief and costs of suit and reasonable attorneys' fees.

28

3.      Plaintiff brings these claims on behalf of himself and a California statewide Class of similarly situated persons who purchased a lawn mower containing a gas combustible engine up to 30 horsepower that was manufactured or sold by a Defendant.

**II.    JURISDICTION AND VENUE**

4.      This Court has personal jurisdiction over the Defendants. The Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(d).  Defendants have transacted business and their affairs in California and have committed the acts complained of in California.  The amount in controversy exceed $5,000,000.00.

5.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b), (c), and (d) because a substantial part of the events giving rise to Plaintiff's claims occurred in this district.  Defendants have transacted business and their affairs in this district and have committed the acts complained of in this district.

**III.    PARTIES**

**A.    Plaintiff**

6.      Plaintiff Carl Phillips resides within this judicial district at 512 Laramie Way, Vacaville, California 95688.  In approximately July 2003, Mr. Phillips purchased a Lawn Machine lawn mower at retailer Lowe's, located in Vacaville, California, which was manufactured by MTD and contained a purported, labeled 6 horsepower engine manufactured by Briggs & Stratton Corporation.  Mr. Phillips paid approximately $179 for the lawn mower.

**B.    Defendants**

7.      Defendant Sears, Roebuck and Company ("Sears") is a corporation with its headquarters located at 3333 Beverly Road B-5 317A, Hoffman Estates, Illinois. Sears sells lawn mowers under its brand name, Craftsman, which are manufactured by Electrolux Home Products, Inc. During the Class Period, Sears' Craftsman lawn mowers have contained engines manufactured by Tecumseh Products Company, Briggs & Stratton Corporation, The Kohler Company, and American Honda Motor Company, Inc. Sears also sells certain other brands of lawn mowers in addition to its Craftsman lawn mowers. Sears advertises, markets and sells Craftsman lawn mowers throughout the United States, including in California.

8.      Defendant Deere & Company ("Deere") is an Illinois corporation with its headquarters located at One Deere Place, Moline, Illinois. During the Class Period, Deere has installed in its lawn mowers engines manufactured by Defendants Briggs & Stratton Corporation, American Honda Motor Company, Inc., Kawasaki Motors Corp. USA, and The Kohler Company. Deere advertises, markets and sells lawn mowers throughout the United States, including in California.

9.      Defendant Tecumseh Products Company ("Tecumseh") is a corporation with its headquarters located at 100 East Patterson Street, Tecumseh, Michigan. During the Class Period, Tecumseh has manufactured engines for installation in lawn mowers sold by Defendants Sears, Electrolux Home Products, Inc., MTD Products Inc, and The Toro Company. Tecumseh manufactures engines that are installed in lawn mowers advertised, marketed and sold throughout the United States, including in California.

10.     Defendant Platinum Equity, LLC ("Platinum") is a California company with its headquarters located at 360 North Crescent Drive, South Building, Beverly Hills, California 90210.  Platinum acquired Defendant Tecumseh's engines division in November 2007. During the Class Period Platinum manufactured engines that are installed in lawn mowers advertised, marketed and sold throughout the United States, including in California.

11.     Defendant Briggs & Stratton Corporation ("Briggs & Stratton") is a corporation with its headquarters located at 12301 West Wirth Street, Wauwatosa, Wisconsin. During the Class Period, Briggs & Stratton manufactured engines for installation in lawn mowers sold by Defendants Sears, MTD Products Inc, Electrolux Home Products Inc., Deere and The Toro Company. Briggs & Stratton has acquired certain assets of original equipment manufacturers and is engaged in the manufacturing and sale of certain lawn mowers. Specifically, in June 2004, Briggs announced its acquisition of Simplicity Manufacturing, Inc., which is headquartered in Port Washington, Wisconsin. In October 2002, Simplicity acquired Snapper, Inc., a Georgia manufacturer of lawn mowers and other outdoor products. Briggs & Stratton manufactures engines that are installed in lawn mowers advertised, marketed and sold throughout

the United States, including in California.  Briggs & Stratton advertises, markets, and sells its own brand of lawn mowers throughout the United States, including in California.

12.     Defendant Kawasaki Motors Corp. USA ("Kawasaki") is a corporation with its corporate headquarters located at 9950 Jeronimo Road, Irvine, California. During the Class Period, Kawasaki manufactured engines for installation in lawn mowers sold by Defendants Deere, MTD Products Inc, Electrolux Home Products, Inc., and The Toro Company. Kawasaki manufactures engines for installation in lawn mowers advertised, marketed and sold throughout the United States, including in California.

13.     Defendant MTD Products Inc ("MTD") is a corporation with its headquarters at 5965 Grafton Road, Valley City, Ohio. MTD manufactures lawn mowers under the brand names Cub Cadet, Troy Bilt, Yard-Man, Yard Machines, Bolens and White Outdoor. During the Class Period, MTD installed in its lawn mowers engines manufactured by Defendants Briggs & Stratton, American Honda Motor Company, Inc., Kawasaki, The Kohler Company and Tecumseh. MTD advertises, markets and sells lawn mowers throughout the United States, including in California.

14.     Defendant The Toro Company ("Toro") is a corporation with a corporate address of 8111 Lyndale Avenue South, Bloomington, Minnesota. Toro manufactures lawn mowers under the brand names Toro, Lawn-Boy and Exmark. During the Class Period, Toro installed in its lawn mowers engines manufactured by Defendants Tecumseh, Kawasaki, The Kohler Company, American Honda Motor Company, Inc., and Briggs & Stratton. Toro advertises, markets and sells lawn mowers throughout the United States, including in California.

15.     Defendant American Honda Motor Company, Inc. ("Honda") is a subsidiary of Honda Corporation with a corporate address of 4900 Marconi Drive, Alpharetta, Georgia. During the Class Period, Honda manufactured engines for installation in lawn mowers sold by Defendants MTD, Deere, Electrolux Home Products, Inc., and Toro. Honda advertises, markets and sells lawn mowers and lawn mower engines throughout the United States, including in California.

16.    Defendant Electrolux Home Products, Inc. ("Electrolux") is a corporation with a corporate address of 18013 Cleveland Parkway, Suite 100, Cleveland, Ohio. Electrolux manufactured lawn mowers as American Yard Products ("AYP"). Electrolux also did business as Husqvarna Outdoor Products Inc., and Husqvarna AB until June 2006. AYP produced lawn mowers marketed under the brand names Poulan, Poulan PRO, Weed Eater and Husqvarna. AYP also manufactured lawn mowers for Sears sold under the Sears Craftsman brand. During the Class Period, Electrolux installed in its lawn mowers engines manufactured by Defendants Tecumseh, Kawasaki, The Kohler Company, Honda and Briggs & Stratton. During the Class Period, Electrolux advertised, marketed and sold lawn mowers throughout the United States, including in California. In June 2006, Electrolux's outdoor products segment was spun-off. A separate entity resulting from the spin-off is known as Husqvarna Outdoor Products, Inc.

17.    Defendant Husqvarna Outdoor Products, Inc. ("Husqvarna") is a company with a corporate address of 1030 Stevens Creek Rd, Augusta, Georgia 30907.  Husqvarna manufactures lawn mowers advertised, marketed and sold throughout the United States, including in California.  Husqvarna manufactures lawn mowers marketed under the brand names Poulan, Poulan Pro, Weed Eater and Husqvarna, as well as lawn mowers sold under Sears's Craftsman brand.

18.    Defendant The Kohler Company ("Kohler") is a corporation with headquarters located at 444 Highland Drive, Kohler, Wisconsin 53044. During the Class Period, Kohler manufactured engines for installation in lawn mowers sold by Defendants Deere, Toro, Electrolux, and MTD. Kohler manufactures engines that are installed in lawn mowers advertised, marketed and sold throughout the United States, including in California.

IV.    **AGENTS AND CO-CONSPIRATORS**

19.    The acts alleged against the defendants in this Complaint were authorized, ordered, or done by their officers, agents, employees, or representatives, while actively engaged in the management and operation of defendants' businesses or affairs.

20.    Various persons and/or firms not named as defendants herein may have participated as co-conspirators in the violations alleged herein and may have performed acts and made statements in furtherance thereof.

21.    Each defendant acted as the principal, agent, or joint venturer of, or for, other defendants with respect to the acts, violations, and common course of conduct alleged by plaintiffs.

**V.    FACTUAL ALLEGATIONS**

22.    Defendants manufacture, advertise, market and sell lawn mowers and the engines installed in lawn mowers to consumers throughout the United States, including in California.

23.    Defendants currently sell nearly six million lawn mowers to the public throughout the United States, including California, per year.

24.    During the Class Period, Defendants have used the unit of horsepower to label, categorize, and market their lawn mowers and lawn mower engines. The higher the actual horsepower, the more power the engine produces.

25.    The more horsepower generated by a lawn mower's engine, the better and faster the lawn mower is able to perform.

26.    Defendants market and offer for sale at higher prices lawn mowers labeled or otherwise advertised with higher horsepower.  The higher the horsepower, the higher the price Defendants charge.  Consumers throughout California, including Plaintiff and members of the proposed Class, pay more for lawn mowers labeled or otherwise represented by Defendants as producing higher horsepower.

27.    The horsepower of a lawn mower is a material fact, one that is important to a consumer and is the type of information upon which a buyer would be expected to rely in making a purchasing decision. Statements of horsepower are factual representations that are likely to affect the lawn mower purchasing decisions or conduct of consumers, including Plaintiff and members of the proposed Class. As Defendant Briggs & Stratton's president and CEO, John Shiely, explained during an April 20, 2006 conference call with shareholders and analysts: "As

far as the customers are concerned, it's always been our experience that, you know, more horsepower is better and that, ultimately that becomes the demand, that becomes what the customer wants."

### A.    Defendants' Misrepresentations of Horsepower

28.    The horsepower purportedly generated by Defendants' lawn mowers is identified as a number on labels located on the lawn mowers or on the lawn mowers' engines, and/or in Defendants' other advertising, including packing materials, owner's manuals, materials distributed with Defendants' lawn mowers, Defendants' websites, and point-of-sale and other promotional materials disseminated or caused to be disseminated by or on behalf of Defendants to the public throughout the United States, including in California.

29.    Defendants have knowingly misrepresented and significantly overstated the horsepower of Defendants' lawn mowers and lawn mower engines.

30.    Throughout the Class Period (January 1, 1994 through the present), Defendants have knowingly misrepresented the horsepower of Defendants' lawn mowers and lawn mower engines through statements and representations made and disseminated to the public in Defendants' advertising, including product labeling, packing materials, owner's manuals, websites, point-of-sale materials and other promotional materials.

31.    In fact, the true horsepower of Defendants' engines is significantly less than the horsepower represented by Defendants in advertising, marketing and selling their lawn mowers and lawn mower engines to the public.

### B.    Defendants Market and Sell Lawn Mowers Containing Identical Engines as Different Products at Different Prices – Higher Prices for Falsely Represented Higher Horsepower.

32.    Defendants knowingly advertise, market and sell identical engines with varying horsepower ratings and labels, thereby representing (directly and by implication) that these identical engines are different.  In fact these engines are identical on the basis of horsepower.  Defendants sell these identical, but differently and misleadingly labeled, engines at different prices—with higher prices for engines falsely labeled with purported higher horsepower.

Defendants thereby represent that the products are different when they are not but, rather, contain identical engines.

33.     In advertising, marketing and selling such engines, Defendants charge or cause to be charged a higher price for such identical engines containing a falsely represented higher horsepower.

34.     In advertising, marketing and selling such lawn mowers, Defendants conceal, suppress and fail to disclose the material fact that the lawn mowers contain identical engines.

35.     In selling such lawn mowers containing identical engines that produce the same horsepower as different products and at different prices—higher prices for falsely represented higher horsepower—Defendants repeatedly misrepresent the horsepower of the engines and conceal, suppress and fail to disclose material facts, including that such products contain identical engines and the true, significantly lower horsepower of the engines.

**C.     <u>Concealment, Suppression and Omissions of Material Facts</u>**

36.     In advertising, marketing and selling their lawn mowers and lawn mower engines to the public, Defendants have repeatedly concealed, suppressed and failed to disclose material information, including the true, significantly lower horsepower of their lawn mowers and lawn mower engines.

37.     Defendants' advertising, including labeling, packing materials, owner's manuals, websites, point-of-sale materials and other promotional materials, conceals, suppresses and fails to disclose the true, significantly lower horsepower actually produced by Defendants' lawn mowers and lawn mower engines.

38.     Defendants published, and caused third party websites to publish, misleading information regarding lawn mower horsepower in an attempt to conceal and suppress the material fact of the true lower horsepower of Defendants' products.

**D.     Conspiracy to Defraud the Public and to Conceal Defendants' Fraudulent Practices**

39.     While knowingly misrepresenting horsepower in advertising, marketing and selling their own lawn mowers and lawn mower engines to the public, Defendants know that the other Defendants' lawn mower engines do not produce the horsepower represented by such other Defendants. Defendants have routinely tested other Defendants' engines and are aware that the other Defendants also misrepresent the horsepower of their engines and that other Defendants conceal, suppress and fail to disclose to the public the true, significantly lower horsepower of their engines.

40.     While knowing of the other Defendants' horsepower misrepresentations and omissions, Defendants agreed to conceal, suppress and fail to reveal the horsepower misrepresentations and omissions of the other Defendants.

41.     Defendants communicated among themselves and agreed and conspired to conceal and suppress other Defendants' misrepresentations and omissions relating to the horsepower of other Defendants' lawn mowers and lawn mower engines, while misrepresenting, significantly overstating the horsepower, and concealing and suppressing the true, significantly lower horsepower of Defendants' own lawn mowers and lawn mower engines.

42.     Defendants have an incentive to hide truthful information about the true, lower-than-represented horsepower of each other's lawn mowers and lawn mower engines from the public, since Defendants are all engaging in the false, misleading, and deceptive advertising and unfair and deceptive trade practices and unlawful conduct set forth in this Complaint.

43.     As a result of their conspiracy to conceal truthful horsepower information and defraud the public, Defendants are able to continue to misrepresent and conceal and suppress the true horsepower of Defendants' lawn mowers and lawn mower engines sold to Plaintiff and the public and charge higher prices than they would if not for their misrepresentations and illegal concerted activity.

**Defendants' Power Labeling Task Force Furthered and Concealed their Fraud**

44.     Defendants Deere, Tecumseh, Briggs & Stratton, Kawasaki, MTD, Toro, Honda, Electrolux, and Kohler are all members in a group that they call the "Power Labeling Task Force," which provides Defendants the means, opportunity and cover to meet, discuss, conspire, conceal and further their fraudulent horsepower misrepresentations. The Power Labeling Task Force regularly met at various locations, and agendas of the meetings were distributed in advance of the meetings. After the meetings, minutes and other summaries of the meetings were also distributed to Defendants.

<strong>OPEI Website</strong>

45.     In or about 2001, the members of the Power Labeling Task Force, including representatives of Defendants, met and discussed various means by which to conceal horsepower fraud and misrepresent horsepower to the consuming public. One suggestion was to put a "disclaimer"—a statement containing misleading information on horsepower issues designed to confuse the consuming public—on the Outdoor Power Equipment Institute, ("OPEI," an otherwise legitimate organization) website. The disclaimer was titled "Understanding Horsepower" and includes misleading information on horsepower issues.

46.     On July 10, 2001, William G. Harley and Patrick W. Curtiss of the OPEI mailed to Defendants a memorandum listing the uniform means by which the Power Labeling Task Force members intended to misrepresent horsepower testing procedures and to conceal Defendants' fraudulent horsepower labeling practices from consumers.

47.     The members of the Power Labeling Task Force, which are also members of the OPEI, voted in favor of the proposal, and the OPEI created the webpage containing misleading horsepower information. The webpage continues to be on the OPEI's website. www.opei.org/consumer/horsepower.asp.

48.     Defendants conduct rises above mere fraud. Not only do Defendants lie about the horsepower of their lawn mowers and lawn mower engines, Defendants conspired to conceal these lies and deceive the consuming public by using the website of a legitimate entity.

**The creation of and amendment to SAE J1940**

49.    The Society of Automotive Engineers ("SAE") is a large, well respected, automotive industry organization that creates and publishes engineering standards that are voluntarily followed by manufacturers.  Standards are promulgated though committees that include industry members.  During the Class Period, Defendants Briggs & Stratton, Kohler, Tecumseh, Kawasaki and Honda were members of the SAE Small Engine & Power Equipment Committee, which is the committee responsible for small engines, including lawn mower engines. Defendant Tecumseh's employee and agent, Mike Adams, was Chairman, and Defendant Kohler also served in a leadership capacity as the secretary of the SAE Small Engine & Power Equipment Committee through Kohler's employee and agent Mark Swanson. All five engine manufacturing Defendants became members of the SAE Small Engine & Power Equipment Committee.

50.    In the late 1980s, several Defendants became aware of concerns expressed about horsepower fraud. They then took action within the SAE and implemented a "labeling standard" called "SAE J1940" the purpose and effect of which was to conceal horsepower fraud. This labeling standard was an attempt to give Defendants a purportedly legitimate reason for labeling their engines with a horsepower representation different than what their test results achieved and to conceal their conspiracy and illegal acts. There is no legitimate reason for a horsepower labeling standard. Instead, Defendants should label their engines with the actual horsepower achieved by the horsepower test.

51.    In or about 2000, The Power Labeling Task Force instructed its members, which were also members of the SAE Small Engine & Power Equipment Committee, to recommend to the rest of the committee that revisions to SAE J1940 be made which would further conceal Defendants' fraudulent horsepower representations.  The Power Labeling Task Force amended, or caused to be amended, the SAE J1940 labeling standard to allow for a "fudge factor" of up to 15% to be added to horsepower labels.  The Power Labeling Task Force also concealed the true reasons for the amendments to SAE standards by creating false or misleading explanations for the purpose of, or reasons for, those amendments.  Even assuming that

Defendants use accurate horsepower testing procedures, the amended SAE J1940 standard explicitly "permits" Defendants to lie about horsepower to consumers, and then to point to the labeling standard that they conspired to create through the Power Labeling Task Force as the fraudulent justification for the overstatement of horsepower. Because the SAE J1940 standard appears on its face to be a standard of the SAE—an otherwise legitimate association— Defendants' fraudulent horsepower labeling practices are given the imprimatur of legitimacy and its conspiracy is concealed.

### Creation of SAE J1995 "gross" horsepower

52.     In 1990, Defendants conspired to create another SAE standard to both conceal horsepower fraud and to give Defendants another means to affirmatively misrepresent horsepower to the consuming public. In 1990, several Defendants caused to be created, published and disseminated worldwide SAE J1995, which is a "gross" horsepower testing protocol. "Gross" horsepower is the theoretical horsepower that an engine could achieve under ideal laboratory conditions with all of the legally required accessories removed from the engine—such as the air filter and exhaust mechanism. By causing the creation of SAE J1995, Defendants created a new, entirely different definition of horsepower for lawn mowers and lawn mower engines that is deceptive to consumers. Prior to 1990, Defendants used "net" horsepower, which is the horsepower used in other industries, such as the auto industry.

53.     "Gross" horsepower is deceptive because by removing the necessary components, such as exhaust systems and air filters, which drain an engine of power, a higher horsepower can be achieved in the laboratory than in the field. Of course, no consumer ever uses a lawn mower without an exhaust, air filter and all of the other necessary parts of an engine. Further, it is against Federal and California state law to sell a lawn mower without such parts.

54.     Defendants continue to label their engines today, and at all relevant times, with gross horsepower in "accordance" with the fraudulently created SAE J1995 standard. Because Defendants continue to rely on SAE J1995 and continue to use "gross" horsepower instead of net horsepower, Plaintiff and members of the Class, and future purchasers of mislabeled lawn mowers, have been injured as a result of this conspiracy.

55.    Defendants' conspiratorial use of gross horsepower to label their engines is fraudulent. In labeling their engines, Defendants did not disclose what gross horsepower means, and never disclose that the horsepower they use to label their engines differs from the horsepower used by other industries such as the automobile industry.

**Torque power**

56.    In or about 2004, the Power Labeling Task Force began meeting and discussing alternative means of labeling horsepower and to further their conspiracy. Defendant Briggs & Stratton coordinated the research. The research was presented to the members of the Power Labeling Task Force by Stuart Drake of Kirkland & Ellis, who proposed that Task Force take action to use alternative labeling practices. The Power Labeling Task Force continued to meet and discuss alternatives up until at least the day before this litigation was commenced in state court on June 3, 2004.

57.    Starting in 2007, several Defendants, including Defendants MTD and Briggs & Stratton began labeling their lawn mower engines with "torque." Defendant Briggs & Stratton entered into an indemnity agreement with Defendant MTD whereby Defendant Briggs & Stratton agreed to indemnify Defendant MTD for claims of fraud arising from the labeling of lawn mowers and lawn mower engines with "torque." Defendants point to the amended SAE J1940 standard as the authority that allows them to label with "torque," despite the fact that engineers assert that "torque" is not an appropriate quantifier of power and should not be used in power labeling.

58.    Although Defendants did not begin to use "torque" to label engines until 2007, Defendants rely on the 2002 amendment to SAE J1940 for justification to use torque to label engines. As such, this conduct demonstrates a continued risk that the Power Labeling Task Force will take further steps in the future to continue working on means to provide cover to horsepower fraud.

**Defendant Engine Manufacturers Conspired to Conceal their Fraud**

59.    Defendants Briggs & Stratton, Kohler and Tecumseh formed a private group that they called the "Eagle Group" to discuss common issues facing their companies, such

1    as proposed federal and state environmental regulations.  The Eagle Group has been a means for

2    Defendants to discuss horsepower overstatement and proposed methods to conceal their

3    respective fraud.

4         60.    The Eagle Group has met in Wisconsin and Illinois and has existed since at

5    least 1994.  The Eagle Group has appeared at Power Labeling Task Force meetings.

6         **"Most Powerful" Craftsman Conspiracy**

7         61.    Since at least the mid-1990s, and at all times during the Class Period,

8    Defendant Sears has sold Craftsman lawn mowers, which Defendant Sears has touted as the

9    "most powerful" lawn mowers on the market. Since at least the mid-1990s, and at all times during

10   the Class Period, Defendants have sold lawn mowers to Defendant Sears, including the lawn

11   mowers sold under the Craftsman brand.

12        62.    Defendants Briggs & Stratton, Kohler, Electrolux and Sears conspired to

13   deceive consumers by significantly overstating horsepower to the public, as well as concealing

14   truthful horsepower information from the consuming public.  During the Class Period, Sears

15   marketed, advertised and sold lawn mowers it claimed were the "most powerful" on the market.

16   Even though Briggs & Stratton sells the same exact engines to other lawn mower manufacturers,

17   the highest fraudulent horsepower labels are exclusively reserved for lawn mowers sold at

18   Sears—despite the fact that the horsepower of the Sears Craftsman lawn mower engines, contrary

19   to Sears's representations as the "most powerful" engines, is not greater than the same engines

20   sold by Briggs & Stratton to other lawn mower manufacturers.  Briggs & Stratton conspired with

21   Sears to provide Sears with the exclusive right to the highest fraudulent horsepower labels.

22        63.    Defendants Briggs & Stratton, Kohler, Electrolux, and Sears's conspiracy

23   allowed Sears to represent to the consuming public that Sears sells "the most powerful" lawn

24   mower engines in the world.  For example, on April 9, 2002, in a news release put on the wires

25   from its Hoffman Estates, Illinois headquarters, Sears announced that Sears's "Craftsman has

26   introduced a propelled, front-wheel-drive lawn mower with a 7 hp Briggs & Stratton engine – the

27   most powerful lawn mower engine ever built for use at home."  The press release goes on to state

28   that "[t]he industry's mightiest mower is joined by the most powerful consumer tractor on the

1    market – the Craftsman 27 hp Kohler Pro Garden Tractor."  This fraudulent misrepresentation has

2    been transmitted continuously via the Internet since April 9, 2002.

3            64.    The representations made by Sears in the April 9, 2002 press release that

4    was disseminated on the Internet and via the United States mails stating that the "7 horsepower"

5    Briggs & Stratton engine and the "27 horsepower" Kohler engine are the "most powerful"

6    engines on the market are patently false and misleading.  The advertised Briggs & Stratton engine

7    produces far less than 7 horsepower.  The advertised Kohler engine produces far less than 27

8    horsepower.  Further, the engine that Briggs & Stratton, Electrolux, and Sears knowingly

9    advertise, including through labeling, marketing, and selling to consumers the "most powerful"

10    walk-behind lawn mower—the 7 horsepower Briggs & Stratton engine—is the same engine that

11    is sold to other consumers with horsepower labels less than 7 horsepower.  Further, the engine

12    that Kohler, Electrolux, and Sears knowingly advertise, including through labeling, marketing,

13    and selling to consumers as the "most powerful" riding lawn mower—the 27 horsepower Kohler

14    engine—is the same engine that is sold to other consumers with horsepower labels less than 27

15    horsepower.

16        **E.    Defendants Fraudulently Concealed their Continuing Fraud from Discovery**
          **by Plaintiff**

17

18            65.    Plaintiff and members of the proposed Class did not know, and had no

19    reasonable way of knowing, (a) that Defendants, in advertising, marketing and selling their lawn

20    mowers and lawn mower engines, engaged in the unfair and deceptive acts or practices and other

21    unlawful conduct set forth in this Complaint; (b) the falsity of Defendants' material

22    misrepresentations; or (c) Defendants' conspiracy to conceal and suppress truthful information

23    about the actual horsepower of other Defendants' lawn mowers and lawn mower engines, while

24    concealing and suppressing truthful information about the actual, significantly lower-than-

25    represented horsepower of Defendants' own lawn mowers and lawn mower engines.

26            66.    Defendants affirmatively and actively concealed their misrepresentations

27    and omissions and their conspiracy in order to avoid detection and hide their unlawful conduct

28    from Plaintiff and the public.

67.    Defendants' conduct of misrepresenting and concealing material facts concerning the horsepower of Defendants' lawn mowers and lawn mower engines, and Defendants' conduct in advertising, marketing and selling lawn mowers containing identical engines as different products at different prices—higher prices for falsely represented higher horsepower—without disclosing the material facts that the engines are identical and the true, significantly lower horsepower of such products, concealed from Plaintiff their causes of action.

68.    Defendants further concealed their use of the same engines in differently labeled and differently priced lawn mowers by covering the engines with different shrouds or covers that typically display a different horsepower number, even though the covered engine is identical to that contained in lawn mowers with different shrouds or covers (and typically with a different horsepower label on the shrouds). These shrouds or covers have no effect on performance of the lawn mower. Defendants use them as fraud covers to falsely represent that such lawn mowers are different products (with different horsepower ratings), which Defendants advertise and sell at different prices (higher prices for higher falsely represented horsepower). In fact, such products are not different, contain identical engines and do not produce the horsepower represented by Defendants.

69.    Defendants' actions in causing the amendment of the SAE J1940 labeling standard further hid their fraud.  As a result of the amendments, the SAE J1940 standard provides that production engines shall develop not less than 85% of the labeled horsepower. The change to the SAE J1940 standard effected by Defendants provides for a built-in "fudge factor." For example, an engine is "accurately" labeled under SAE J1940 if its label states it produces 20 horsepower but only produces 17 horsepower when tested.  This misleading "fudge factor" alone is fraudulent, however, Defendants inflate their horsepower ratings even higher than the "fudge factor."

70.    Additionally, the amended SAE J1940 standard provides Defendants with the option of representing the power of their engines on the basis of "torque power." "Torque power" is not a measure of anything and is a meaningless, fictional value concocted for the sole purpose of concealment.

71.    The true purpose of these changes was to provide cover for and conceal Defendants' fraudulent horsepower misrepresentations and omissions. At meetings attended by Defendants' representatives, it was made clear that the purpose of these changes was to conceal Defendants' past fraud, and to allow Defendants to continue their fraudulent labeling practices.

72.    Defendants' misrepresentations and omissions concerning the horsepower of Defendants' lawn mowers and lawn mower engines have continued despite the changes to the SAE J1940 standard effected by Defendants. Defendants misrepresent and overstate the horsepower of Defendants' lawn mower engines in excess even of the "fudge factor" provided for in the amended voluntary horsepower labeling standard SAE J1940.

73.    Defendants met during the Class Period to discuss ways to conceal their fraud. In June 2003, at an annual board meeting of the OPEI in Colorado Springs, Colorado, John Jenkins, the President of Defendant Deere, warned representatives of several Defendants that if the industry did not address the fraudulent horsepower inflation, he would "blow the whistle" on Defendants' conduct.

74.    At the foregoing meeting, an executive from Defendant Kohler informed an executive of Defendant MTD that a proposal would be drafted by the Eagle Group to address the issue of horsepower inflation and overstatement.

75.    At the April 2004 meeting of the Power Labeling Task Force, a proposal was made for Defendants to take advantage of the amended SAE labeling standard to use "torque power" instead of horsepower in advertising, marketing and selling Defendants' lawn mowers and lawn mower engines. Defendants proposed using "torque power" in order to conceal their misrepresentations and omissions concerning horsepower, because torque has a higher numerical value or number than horsepower and is more confusing to consumers. Changing to "torque power" was an opportunity for Defendants to further conceal their fraud by using a number that is meaningless on an objective, engineering basis, and is simply designed to draw attention away from Defendants' fraudulent conduct involving horsepower misrepresentations and omissions.

76.     Defendants' unlawful conduct and conspiracy as set forth in this Complaint is inherently self-concealing.  In the exercise of reasonable diligence, the true facts regarding the Defendants' fraud and conspiracy could not have been discovered.

77.     Plaintiff and Class members could not and did not detect Defendants horsepower misrepresentations and omissions.  Plaintiff and Class members had no means of discovering or detecting Defendants' horsepower misrepresentations and omissions. Plaintiff does not own or have access to testing equipment necessary to test the actual horsepower of Defendants' lawn mower engines. The testing equipment is virtually impossible for consumers to find and is cost-prohibitive.

78.     Plaintiff and members of the Class are under no duty to inquire into the truthfulness of Defendants' representations, including Defendants' representations concerning the horsepower of Defendants' lawn mowers and lawn mower engines. In advertising, marketing and selling Defendants' lawn mowers and lawn mower engines, Defendants owe a duty to Plaintiff, all Class members and the public to provide truthful, non-deceptive information and to avoid and refrain from unfair and deceptive, and otherwise unlawful acts and practices, including false or misleading advertising.

79.     Defendants also used the OPEI to conceal their fraud by drafting and having placed on the OPEI's website the "Understanding Horsepower" webpage. Through this website posting, Defendants concealed their fraud by attempting to conceal any detectable horsepower shortcomings. While Defendants use gross horsepower to label their engines, the representations made on the OPEI's website state that factors such as atmospheric conditions were to blame for the lack of horsepower in their engines. This website posting is misleading and is designed not to inform consumers, but to conceal Defendants' fraud. Rather than correct their horsepower misrepresentations, Defendants developed more misrepresentations to conceal their fraud and conspiracy.

80.     Plaintiff, in the exercise of due diligence, was not aware of and did not discover the facts underlying their claims, or facts indicating that Defendants' unlawful conduct

1    caused Plaintiff's harm, until only several weeks before originally filing this action on June 3,

2    2004.

3           81.    Defendants' unlawful practices as described in this Complaint are

4    continuing in nature.

5           82.    Unless enjoined, Defendants' unlawful conduct will continue and Plaintiff

6    and members of the Class will continue to purchase Defendants' lawn mowers and lawn mower

7    engines subject to Defendants' unlawful acts and practices set forth in the Complaint.

8       **F.    <u>Harm to Plaintiff and Class Members</u>**

9           83.    Plaintiff and members of the proposed Class are consumers who have been

10   injured in their money or property by purchasing Defendants' lawn mowers and lawn mower

11   engines that were not as represented by Defendants.

12          84.    Plaintiff and the members of the proposed Class suffered actual damages in

13   purchasing lawn mowers that were not as powerful as, and did not contain the horsepower,

14   represented by Defendants and Plaintiff and members of the proposed Class did not receive the

15   benefit of their bargains.

16          85.    Plaintiff and members of the proposed Class paid more for their lawn

17   mowers than they would have paid absent Defendants' unlawful conduct.

18          86.    As a result of Defendants' unlawful conduct, Plaintiff and members of the

19   proposed Class were deprived of the opportunity to make informed purchasing decisions based on

20   truthful information, including, without limitation, not purchasing Defendants' products, or not

21   paying prices for Defendants' products that were inflated due to Defendants' deceit.

22          87.    As a result of Defendants' unlawful conduct, Plaintiff and members of the

23   proposed Class lost the opportunity to purchase accurately labeled, lower horsepower lawn

24   mowers and to pay lower prices for such products, rather than the higher prices Defendants

25   charged or caused to be charged for Defendants' misrepresented products.

26          88.    As a result of Defendants' unlawful conduct, Plaintiff and members of the

27   Class were deprived of the opportunity of making an informed purchasing decision, and were

28

1    deprived of the opportunity to refuse to do business with companies, such as Defendants, engaged

2    in fraudulent and deceptive conduct.

3        89.    As a proximate result of Defendants' unlawful conduct, Plaintiff and

4    members of the proposed Class have suffered damages in an amount to be determined at trial.

5        90.    Defendants have been unjustly enriched by selling millions of

6    misrepresented products to the public through systematic fraud and deception.

7    **G.    Public Interest and Benefit**

8        91.    Plaintiff brings this action on behalf of himself and all similarly situated

9    persons in the proposed Class for the relief requested as to Plaintiff and Class members and to

10    promote the public interests in the provision of truthful, non-deceptive information to the public

11    in order to allow consumers to make informed purchasing decisions, and in protecting Plaintiff

12    and the public from Defendants' unfair, deceptive and fraudulent practices.

13        92.    Defendants' misrepresentations and omissions of material facts and other

14    unlawful conduct as set forth in this Complaint were effected through Defendants' advertising

15    directed to Plaintiff and the public at large and disseminated throughout the United States,

16    including in California.

17    **VI.    CLASS ACTION ALLEGATIONS**

18        93.    Pursuant to Rule 23(a), (b)(2) and (b)(3), Plaintiff brings this action on

19    behalf of himself and the members of the following proposed Class:

20        All persons in California who, beginning January 1, 1994 through
        the present purchased, for their own use and not for resale, a lawn
21        mower containing a gas combustible engine up to 30 horsepower
        provided that either the lawn mower or the engine of the lawn
22        mower was manufactured or sold by a Defendant.

23        94.    Excluded from the Class are (i) each Defendant, any entity in which a

24    Defendant has a controlling interest or which has a controlling interest in any Defendant, and

25    Defendants' legal representatives, predecessors, successors and assigns; (ii) governmental

26    entities; (iii) Defendants' employees, officers, directors, agents, and representatives and their

27    family members; and (iv) the Judge and staff to whom this case is assigned, and any member of

28    the Judge's immediate family.

95.     Members of the proposed Class are so numerous that the individual joinder of all absent Class members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time, it is ascertainable by appropriate discovery. Plaintiff is informed and believes, based upon the nature of the trade and commerce involved, that the proposed Class includes millions of Class members in California.

96.     There are questions of law or fact common to the members of the Class and such common questions predominate over questions affecting individual members. Among the questions of law or fact common to the applicable proposed Class are:

a.     Whether Defendants misrepresented the horsepower produced by the engines in the lawn mowers manufactured or sold by Defendants to Plaintiff and members of the Class;

b.     Whether Defendants concealed, suppressed and failed to disclose truthful information concerning the horsepower produced by the engines manufactured or sold by Defendants in lawn mowers sold to Plaintiff and members of the Class;

c.     Whether Defendants' representations and omissions regarding the horsepower produced by lawn mowers and lawn mower engines manufactured or sold by Defendants involved representations and omissions of material facts;

d.     Whether Defendants advertised and sold lawn mowers containing identical engines as different products at different prices (higher prices for falsely represented higher horsepower), without disclosing the fact that the engines contained in such products are identical;

e.     Whether Defendants' conduct as set forth in this Complaint violates the California Business and Professions Code;

f.     Whether Defendants' conduct as set forth in this Complaint violates the California Consumers Legal Remedies Act;

g.     Whether Defendants' misrepresentations, omissions and other conduct set forth in this Complaint occurred in the course of trade or commerce and/or in the conduct of business;

h.     Whether Defendants conspired to conceal and suppress truthful information about the actual, significantly lower-than-represented horsepower of other Defendants' lawn mowers and lawn mower engines;

i.     Whether Plaintiff and members of the proposed Class have been injured by Defendants' conduct;

j.     Whether Plaintiff and the members of the proposed Class are entitled to damages;

k.     Whether Plaintiff and the members of the proposed Class are entitled to punitive damages and other monetary relief as provided under state law;

l.     Whether Defendants were unjustly enriched as a result of Defendants' conduct set forth in this Complaint;

m.     Whether Defendants conspired to defraud the public and engaged in the unlawful acts or practices in furtherance of the conspiracy as set forth in this Complaint;

n.     Whether injunctive relief is appropriate; and

o.     Whether Plaintiff is entitled to recover costs and expenses incurred in prosecuting this action and reasonable attorneys' fees.

97.     Plaintiff's claims are typical of the claims of the Class. Plaintiff and members of the proposed Class all purchased lawn mowers containing engines manufactured and sold by Defendants. Plaintiff and the members of the proposed Class have all suffered damages as a result of Defendants' common conduct and fraudulent scheme, including Defendants' horsepower misrepresentations and omissions and other unlawful conduct set forth in this Complaint.

98.     Plaintiff will fairly and adequately protect the interests of the proposed Class. Plaintiff has no interest adverse to the interests of the members of the proposed Class. Plaintiff has retained competent counsel who has extensive experience in prosecuting consumer fraud and complex Class action litigation.

99.     The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for Defendants.

100.     Defendants have acted or refused to act on grounds generally applicable to the Class. Declaratory and injunctive relief with respect to the Class is appropriate.

101.     The questions of law or fact common to members of the proposed Class predominate over any individual questions affecting only individual Class members. Each of the members of the proposed Class purchased a lawn mower that was not as represented due to Defendants' misrepresentations of, and concealment, suppression and failure to disclose the actual, significantly lower horsepower of the lawn mower and lawn mower engine. The issues of fact and law applicable to the Class are identical to the issues of fact and law applicable to each individual member of the proposed Class.

102.     A Class action is an appropriate method for the fair and efficient adjudication of this controversy and Class action treatment is superior to the alternatives. There is no special interest in the members of the Class individually controlling the prosecution of separate actions. The damages sustained by individual Class members will not be large enough to justify individual actions, especially in proportion to the tremendous costs and expenses necessary to prosecute this action. The expense and burden of individual litigation makes it impossible for members of the Class individually to address the wrongs done to them. Class treatment will permit the adjudication of claims of Class members who could not afford individually to litigate their claims against Defendants. Further, as a result of Defendants' concealment, millions of Californians remain unaware that they have been injured and will not be aware of Defendants' fraud, or the extent and nature of their injury, in the absence of this Class action. Class treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the duplication of effort and expense that numerous individual actions would entail. No difficulties are likely to be encountered in the management of this Class action that would preclude its maintenance as a Class action, and no superior alternative exists for the fair and efficient adjudication of this controversy. Furthermore,

1    Defendants transact substantial business in California and throughout the United States.

2    Defendants will not be prejudiced or inconvenienced by the maintenance of this Class action in

3    this forum.

4    **VII.    VIOLATIONS ALLEGED**

5                                    **COUNT 1**

6    **Violations of the California Consumers Legal Remedies Act, Cal. Civ. Code § 1750, _et. seq._**

7                103.    Plaintiff Carl Phillips realleges and incorporates all prior paragraphs of this

8    Complaint.

9                104.    The California Consumer Legal Remedies Act, Cal. Civ. Code §

10   1770(a)(5) and (7) (2006), provides, in part, as follows:

11               (a) The following unfair methods of competition and unfair or
         deceptive acts or practices undertaken by any person in a
12       transaction intended to result or which results in the sale or lease of
         goods or services to any consumer are unlawful:
13
14       . . .

15       (5) Representing that goods or services have sponsorship, approval,
         characteristics, ingredients, uses, benefits or quantities which they
16       do not have . . .;

17       . . .

18       (7) Representing that goods or services are of a particular standard,
         quality, or grade, or that goods are of a particular style or model, if
19       they are of another.

20               105.    Defendants' business practices, in advertising, marketing and selling their

21   lawn mowers and lawn mower engines, of misrepresenting and overstating the horsepower of

22   their lawn mowers and lawn mower engines, when, in fact, the actual horsepower of Defendants'

23   lawn mowers and lawn mower engines is less than as represented by Defendants, constitute

24   multiple, separate violations of Cal. Civ. Code § 1770(a)(5) and (7) (2006), including:

25               a.    Falsely representing that Defendants' lawn mowers and lawn

26   mower engines have characteristics, uses, benefits or quantities of producing the represented

27   horsepower, when, in fact, they do not; and

28

b.      Falsely representing that Defendants' lawn mowers and lawn mower engines are of a particular standard, quality or grade in producing the horsepower represented by Defendants, when, in fact, they are not and do not.

106.    Defendants' business practices, in advertising, marketing and selling their lawn mowers and lawn mower engines while misrepresenting the horsepower of such products, of failing to disclose, concealing, suppressing or omitting material information concerning the true, lower horsepower of their lawn mowers and lawn mower engines, constitute multiple, separate violations of  Cal. Civ. Code § 1770(a)(5) and (7) (2006).

107.    Defendants' business practices of advertising, marketing and selling lawn mowers containing identical engines that produce the same horsepower as different products at different prices (higher prices for falsely represented higher horsepower), while misrepresenting the horsepower of such products and concealing, suppressing or omitting material facts, including the facts that such products contain identical engines and the true, lower horsepower of such products, constitute multiple, separate violations of Cal. Civ. Code § 1770(a)(5) and (7) (2006), including:

a.      Falsely representing that such lawn mowers have characteristics, uses, benefits, or quantities, including that they are different products and that they produce the represented horsepower, when, in fact, they are not and do not; and

b.      Falsely representing that such lawn mowers are of a particular standard, quality, grade or style, including that they are different products and that they produce the represented horsepower, when, in fact, they are not and do not.

108.    Plaintiff and members of the Class are consumers, as defined by Cal. Civ. Code § 1761(d) (2006), in that they purchased lawn mowers from Defendants for personal, family or household purposes.

109.    Defendants engaged in the unfair or deceptive acts or practices set forth in this Complaint in transactions intended to result, and which did result, in the sale of goods or services to consumers, including Plaintiff and members of the Class.

110.    In advertising, marketing and selling Defendants' lawn mowers and lawn mower engines, Defendants made the material misrepresentations and omissions set forth in this Complaint in Defendants' advertising, including labeling, packing materials, owner's manuals, Websites, point-of-sale materials and other promotional materials disseminated in California by or on behalf of Defendants.

111.    Defendants' misrepresentations and omissions set forth in this Complaint are material in that they relate to matters that would likely affect the purchasing decisions or conduct of consumers, including Plaintiff and members of the Class, regarding Defendants' products.

112.    Defendants' advertising, including labeling and other promotional materials, caused Plaintiff and Class members to purchase Defendants' lawn mowers and lawn mower engines.

113.    Plaintiff and members of the Class have been injured in their money or property by Defendants' unfair or deceptive acts or practices set forth in this Complaint.

114.    As a result of Defendants' violations of Cal. Civ. Code § 1770, Plaintiff Phillips and members of the Class are entitled to injunctive relief and any other relief the court deems proper, pursuant to California law, including Cal. Civ. Code § 1780(a).

115.    Pursuant to Cal. Civ. Code § 1782, Plaintiff, by his undersigned counsel, provided written notice to Defendants at least thirty days prior to filing this Complaint and demanded that Defendants correct or otherwise rectify their unlawful conduct, which Defendants have failed to do despite such notice.

## COUNT 2

### False Advertising in Violation of California Business & Professions Code § 17500

116.    Plaintiff Carl Phillips realleges and incorporates all prior paragraphs of this Complaint.

117.    Cal. Bus. & Prof. Code § 17500, provides, in part, as follows:

> It is unlawful for any person, firm, corporation or association, or any employee thereof with intent directly or indirectly to dispose of real or personal property or to perform services, professional or

otherwise, or anything of any nature whatsoever or to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated before the public in this state, or to make or disseminate or cause to be made or disseminated from this state before the public in any state, in any newspaper or other publication, or any advertising device, or by public outcry or proclamation, or in any other manner or means whatever, including over the Internet, any statement, concerning that real or personal property or those services, professional or otherwise, or concerning any circumstance or matter of fact connected with the proposed performance or disposition thereof, which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading, or for any person, firm, or corporation to so make or disseminate or cause to be so made or disseminated any such statement as part of a plan or scheme with intent not to sell that personal property or those services, professional or otherwise,  so advertised at the price stated therein, or as so advertised. . . .

118.    Defendants' advertisements for its lawn mowers and lawn mower engines contain untrue or misleading statements concerning the horsepower of Defendants' advertised products in that the actual horsepower of Defendants' lawn mowers and lawn mower engines is less than as represented by Defendants.

119.    Defendants' advertisements for its lawn mowers and lawn mower engines contain untrue or misleading statements concerning the horsepower of Defendants' advertised products in that, while misrepresenting the horsepower of Defendants' lawn mowers and lawn mower engines, Defendants have failed to disclose, concealed, suppressed or omitted material facts, including the true, lower horsepower produced by Defendants' lawn mowers and lawn mower engines.

120.    Defendants' advertisements for lawn mowers containing identical engines that produce the same horsepower but are represented as different products offered and sold at different prices (higher prices for falsely represented higher horsepower) and as containing the horsepower represented by Defendants, contain untrue or misleading statements, and fail to disclose, conceal, suppress or omit material facts, in that the advertised lawn mowers are not different products, contain identical engines and do not produce the horsepower represented by Defendants.

121. Defendants knew, or in the exercise of reasonable care, should have known that the statements, representations and omissions set forth in this Complaint were untrue and/or misleading.

122. Defendants' conduct of misrepresenting and overstating the horsepower of their lawn mowers and lawn mower engines in Defendants' advertising disseminated in California constitutes multiple, separate violations of Bus. & Prof. Code § 17500.

123. Defendants' conduct in failing to disclose, concealing, suppressing or omitting material facts, including the true, lower horsepower of Defendants' lawn mowers and lawn mower engines in Defendants' advertising disseminated in California constitutes multiple, separate violations of Bus. & Prof. Code § 17500.

124. Defendants' conduct in advertising in California Defendants' lawn mowers containing identical engines that produce the same horsepower and representing such products as different products offered and sold at different prices (higher prices for falsely represented higher horsepower), without disclosing the material fact that the lawn mowers contain identical engines, and misrepresenting and failing to disclose, concealing, suppressing or omitting the true, lower horsepower of such engines, constitutes multiple, separate violations of Bus. & Prof. Code § 17500.

125. In advertising, marketing and selling Defendants' lawn mowers and lawn mower engines, Defendants made the material misrepresentations and omissions set forth in this Complaint in Defendants' advertising, including labeling, packing materials, owner's manuals, Websites, point-of-sale materials and other promotional materials disseminated in California by or on behalf of Defendants.

126. Defendants' misrepresentations and omissions set forth in this Complaint are material in that they relate to matters that would likely affect the purchasing decisions or conduct of consumers, including Plaintiff Phillips and members of the Class, regarding Defendants' products.

127.    Defendants' advertising, including labeling and other promotional materials, caused Plaintiff and Class members to purchase Defendants' lawn mowers and lawn mower engines.

128.    Plaintiff Phillips and members of the Class have been injured in their money or property as a result of Defendants' false or misleading advertising practices as set forth in this Complaint.

129.    As a result of Defendants' false or misleading advertising, Plaintiff Phillips and members of the Class are entitled to damages, injunctive relief, restitution and disgorgement of all monies obtained by means of Defendants' unlawful conduct, interest, and attorneys' fees and costs.

## COUNT 3

### Violations of the California Business & Professions Code § 17200, *et seq.*

130.    Plaintiff Carl Phillips realleges and incorporates all prior paragraphs of this Complaint.

131.    California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, defines unfair competition to include:

> any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter 1 (commencing with Section 17500) of Part 3 of Division 7 of the Business and Professions Code.

132.    Defendants' business practices, in advertising, marketing and selling their lawn mowers and lawn mower engines, of misrepresenting and overstating the horsepower of their lawn mowers and lawn mower engines, when, in fact, the actual horsepower of Defendants' lawn mowers and lawn mower engines is less than as represented by Defendants, are:

a.    Unlawful, as proscribed by Cal. Bus. & Prof. Code § 17500 (2006), in that Defendants' advertisements contain unfair, deceptive, untrue or misleading statements of material fact which were and are known by Defendants, or which by the exercise of reasonable care should be known, to be untrue or misleading and, thus, constitute multiple, separate violations of Cal. Bus. & Prof. Code § 17200;

b.      Fraudulent business practices and, thus, constitute multiple, separate violations of Cal. Bus. & Prof. Code § 17200, in that members of the public are likely to be deceived by Defendants' acts and practices into believing a material fact, i.e., that Defendants' lawn mowers and lawn mower engines produce the horsepower represented by Defendants when, in fact, they do not; and

c.      Unfair business practices and, thus, constitutes multiple, separate violations of Cal. Bus. & Prof. Code § 17200, because they offend the public policy of California, are unethical, oppressive, unscrupulous or substantially injurious to consumers or, alternatively, the harm caused by Defendants' actions outweighs any benefits accruing from such actions.

133.    Defendants' business practices, in advertising, marketing and selling their lawn mowers and lawn mower engines while misrepresenting the horsepower of such products, of failing to disclose, concealing, suppressing or omitting material facts, including the true, lower horsepower of their lawn mowers and lawn mower engines, are:

a.      Unlawful, as proscribed by Cal. Bus. & Prof. Code § 17500, in that Defendants' advertisements contain unfair, deceptive, untrue or misleading statements which were and are known by Defendants, or which by the exercise of reasonable care should be known, to be untrue or misleading and, thus, constitute multiple, separate violations of Cal. Bus. & Prof. Code § 17200;

b.      Fraudulent business practices and, thus, constitutes multiple, separate violations of Cal. Bus. & Prof. Code § 17200, in that members of the public are likely to be deceived by Defendants' acts and practices into believing that Defendants' lawn mowers and lawn mower engines produce the horsepower represented by Defendants when, in fact, they do not; and

c.      Unfair business practices and, thus, constitutes multiple, separate violations of Cal. Bus. & Prof. Code § 17200, because they offend the public policy of California, are unethical, oppressive, unscrupulous or substantially injurious to consumers or, alternatively, the harm caused by Defendants' actions outweighs any benefits accruing from such actions.

1          134.    Defendants' business practices of advertising, marketing and selling lawn

2  mowers containing identical engines that produce the same horsepower as different products at

3  different prices (higher prices for falsely represented higher horsepower), while misrepresenting

4  the horsepower of Defendants' products and failing to disclose, concealing, suppressing or

5  omitting material facts, including the facts that such products contain identical engines and the

6  true, lower horsepower of such products, are:

7          a.    Unlawful, as proscribed by Cal. Bus. & Prof. Code § 17500, in that

8  Defendants' advertisements contain unfair, deceptive, untrue or misleading statements which

9  were and are known by Defendants, or which by the exercise of reasonable care should be known,

10  to be untrue or misleading and, thus, constitute multiple, separate violations of Cal. Bus. & Prof.

11  Code § 17200;

12          b.    Fraudulent business practices and, thus, constitutes multiple,

13  separate violations of Cal. Bus. & Prof. Code § 17200, in that members of the public are likely to

14  be deceived by Defendants' acts and practices into believing that such lawn mowers are different

15  products and produce the horsepower represented by Defendants when, in fact, they contain

16  identical engines and do not produce the horsepower represented by Defendants; and

17          c.    Unfair business practices and, thus, constitute multiple, separate

18  violations of Cal. Bus. & Prof. Code § 17200, because they offend the public policy of California,

19  are unethical, oppressive, unscrupulous or substantially injurious to consumers or, alternatively,

20  the harm caused by Defendants' actions outweighs any benefits accruing from such actions.

21          135.    In advertising, marketing and selling Defendants' lawn mowers and lawn

22  mower engines, Defendants made the material misrepresentations and omissions set forth in this

23  Complaint in Defendants' advertising, including labeling, packing materials, owner's manuals,

24  Websites, point-of-sale materials and other promotional materials disseminated in California by

25  or on behalf of Defendants.

26          136.    Defendants' misrepresentations and omissions set forth in this Complaint

27  are material in that they relate to matters that would likely affect the purchasing decisions or

28

1    conduct of consumers, including Plaintiff Phillips and members of the Class, regarding

2    Defendants' products.

3         137.    Defendants' advertising, including labeling and other promotional

4    materials, caused Plaintiff and Class members to purchase Defendants' lawn mowers and lawn

5    mower engines.

6         138.    Plaintiff Phillips and members of the Class have been injured in their

7    money or property as a result of Defendants' unlawful, unfair, or fraudulent business acts or

8    practices and unfair, deceptive, untrue or misleading advertising, as set forth in this Complaint.

9         139.    As a result of Defendants' violations of Cal. Bus. & Prof. Code § 17200, et

10   seq.  Plaintiff Phillips and members of the Class are entitled to damages, restitution and

11   disgorgement of all monies obtained by Defendants by means of Defendants' unlawful practices,

12   injunctive relief, interest, and attorneys' fees and costs, pursuant to California law.

13   **COUNT 4**

14   **<u>Unjust Enrichment and Disgorgement of Profits</u>**

15        140.    Plaintiff Carl Phillips realleges and incorporates all prior paragraphs of this

16   Complaint.

17        141.    Defendants have been unjustly enriched through overpayments by Plaintiff

18   and Class members and the resulting profits enjoyed by Defendants as a direct result of such

19   overpayments.  Plaintiff's detriment and Defendants' enrichment were related to and flowed from

20   the conduct challenged in this Complaint.

21        142.    Under California's common law principles of unjust enrichment,

22   Defendants should not be permitted to retain the benefits conferred via overpayments by Plaintiff

23   and members of the Class.

24        143.    Plaintiff and members of the Class seek disgorgement of all profits

25   resulting from such overpayments and establishment of a constructive trust from which Plaintiff

26   and Class members may seek restitution.

27

28

**COUNT 5**

**Civil Conspiracy**

144.    Plaintiff Carl Phillips realleges and incorporates all prior paragraphs of this Complaint.

145.    Defendants know that other Defendants' lawn mower engines do not produce the horsepower represented by such other Defendants.  Such knowledge derives, in part, from Defendants' testing of other Defendants' engines and from communications, meetings and conferences between and among Defendants as set forth in this Complaint.  Defendants are aware that the other Defendants misrepresent and overstate the horsepower of their lawn mowers and lawn mower engines and that other Defendants conceal, suppress and fail to disclose to the public the true, lower horsepower of their products.

146.    Despite knowing of the other Defendants' horsepower misrepresentations and omissions, Defendants agreed among and between themselves and conspired to conceal and suppress truthful information about the actual, lower-than-represented horsepower of other Defendants' lawn mowers and lawn mower engines, and to conceal and suppress truthful information that would expose other Defendants' misrepresentations, overstatements and omissions relating to the horsepower of other Defendants' lawn mowers and lawn mower engines, while concealing and suppressing truthful information about the actual, lower-than-represented horsepower of Defendants' own lawn mowers and lawn mower engines.

147.    In furtherance of the conspiracy, Defendants actively concealed and suppressed truthful information concerning the actual horsepower of other Defendants' lawn mowers and lawn mower engines and concealed and suppressed truthful information that would expose other Defendants' misrepresentations, overstatements and omissions relating to the horsepower of other Defendants' lawn mowers and lawn mower engines, while continuing to misrepresent, significantly overstate and conceal and suppress information concerning the actual, lower horsepower of Defendants' own lawn mowers and lawn mower engines.  Defendants acted for the common purpose and design of avoiding detection, earning revenue from advertising and

1   selling products that were not as represented to the public, and concealing their unlawful conduct

2   from Plaintiff, the Class and the public.

3          148.    As set forth in this Complaint, Defendants committed unlawful acts or

4   practices in furtherance of the conspiracy, including:

5                  a.    Concealing and suppressing truthful information about the actual,

6   lower-than-represented horsepower of other Defendants' lawn mowers and lawn mower engines

7   and concealing and suppressing truthful information that would expose other Defendants'

8   misrepresentations, overstatements and omissions relating to the horsepower of other Defendants'

9   lawn mowers and lawn mower engines, while continuing to misrepresent, overstate and conceal

10  and suppress information concerning the true, lower-than-represented horsepower of Defendants'

11  own lawn mowers and lawn mower engines;

12                 b.    Amending, or causing to be amended, the amendment of the

13  voluntary industry standard SAE J1940 in order to conceal Defendants' past horsepower

14  misrepresentations and omissions and to allow Defendants to continue, and continue to conceal,

15  their horsepower misrepresentations and omissions;

16                 c.    Concealing and suppressing the fraudulent, deceptive purpose of

17  the amendments to the SAE standard and creating false or misleading explanations for the

18  adoption or purpose of those amendments; and

19                 d.    Engaging in the unfair and deceptive acts and practices set forth in

20  this Complaint, in violation of the California statutory consumer laws.

21         149.    Defendants conspired and acted in furtherance of the conspiracy for the

22  common purpose of perpetuating Defendants' fraudulent horsepower inflation scheme in order to

23  maximize profits from the advertising and sale of Defendants' lawn mowers and lawn mower

24  engines that were not as represented by Defendants.  Defendants' horsepower inflation scheme is

25  dependent upon each Defendant's concealment and suppression of truthful information

26  concerning other Defendants' horsepower misrepresentations and overstatements and the

27  concealment and suppression of the true, lower-than-represented horsepower of other Defendants'

28  products, thereby allowing each Defendant to continue to misrepresent, overstate and conceal and

1    suppress truthful information concerning the actual, lower horsepower contained in Defendants'

2    own lawn mowers and lawn mower engines.

3          150.    Defendants' unlawful conduct set forth in this Complaint was done as part

4    of a conspiracy to deceive and mislead Plaintiff and members of the public in violation of the

5    California consumer laws.

6          151.    As a proximate result of Defendants' conspiracy, and Defendants' tortious,

7    unlawful conduct in furtherance of the conspiracy, Plaintiff and members of the Class have been

8    injured and have suffered damages, including paying for products that were not as represented by

9    Defendants, and paying more for such products than Plaintiff and members of the Class would

10   have paid in the absence of Defendants' conspiracy.

11         152.    Plaintiff and members of the Class seek recovery of damages, in an amount

12   to be determined at trial, caused by Defendants' conspiracy and Defendants' unlawful acts in

13   furtherance of their conspiracy to defraud Plaintiff and the public.

14         153.    In doing the things herein alleged, Defendants acted with malice and with

15   fraud, willfully and with the intent to cause injury to the Plaintiff and the Class he seeks to

16   represent.  Defendants were therefore guilty of fraud and conscious disregard of Plaintiff's and

17   the Class's rights, thereby warranting an assessment of punitive damages in an amount

18   appropriate to punish Defendants and to deter others from engaging in similar misconduct.

19   **VIII.   REQUEST FOR RELIEF**

20         WHEREFORE, Plaintiff respectfully requests that the Court award judgment,

21   jointly and severally, against Defendants as follows:

22         A.      Entering an order certifying this action as a Class action, properly brought

23   by Plaintiff on behalf of the Class, as defined in this Complaint; certifying Plaintiff as

24   representative of the Class; and appointing Plaintiff's counsel as counsel for the Class;

25         B.      Declaring that Defendants' acts and practices as set forth in this Complaint

26   constitute multiple, separate violations the above California statutory consumer laws;

27         C.      Enjoining Defendants from engaging in the unlawful acts and practices set

28   forth in this Complaint and from further violations of California statutory consumer laws and

1   common law;

2          D.      Enjoining Defendants from misrepresenting to the consuming public any

3   power rating regarding their engines or lawn mowers;

4          E.      Awarding Plaintiff and the members of each Class actual, compensatory

5   damages in an amount to be determined at trial;

6          F.      Awarding Plaintiff and members of the Class exemplary or punitive

7   damages as provided by law;

8          G.      Ordering Defendants to disgorge to Plaintiff and the members of the Class

9   all monies unjustly received through Defendants' unlawful conduct;

10         H.      Awarding restitution to Plaintiff and members of the Class as provided by

11  law;

12         I.      Awarding Plaintiff and members of the Class pre-judgment and post-

13  judgment interest as provided by law;

14         J.      Awarding Plaintiff and the Class costs and reasonable attorneys' fees as

15  provided by law; and

16         K.      Granting Plaintiff and the Class such other and further relief as the Court

17  finds just and proper.

18                          **<u>DEMAND FOR JURY TRIAL</u>**

19         Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands

20  a jury trial as to all issues so triable.

21  Dated:  May ___, 2008

22                          By:_____

23                          Joseph R. Saveri (State Bar No. 130064)
                            *jsaveri@lchb.com*
24                          Michael W. Sobol (State Bar No. 194857)
                            *msobol@lchb.com*
25                          Eric B. Fastiff (State Bar No. 182260)
                            *efastiff@lchb.com*
26                          LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
                            Embarcadero Center West
27                          275 Battery Street, 30th Floor
                            San Francisco, CA  94111-3339
28                          Telephone:  (415) 956-1000

1

2    Samuel D. Heins
*sheins@heinsmills.com*
3    Vincent J. Esades
*vesades@heinsmills.com*
4    Scott W. Carlson
*scarlson@heinsmills.com*
5    Katherine T. Kelly
*kkelly@heinsmills.com*
6    HEINS MILLS & OLSON, P.L.C.
310 Clifton Avenue
7    Minneapolis, MN  55403
Telephone:  (612) 338-4605

8    Brian M. Sund
*bsund@morrisonfenske.com*
9    Eric G. Nasstrom
*enasstrom@morrisonfenske.com*
10    Joshua G. Hauble
*jhauble@morrisonfenske.com*
11    MORRISON FENSKE & SUND, P.A.
5125 County Road 101, Suite 102
12    Minnetonka, MN 55345
Telephone: (952) 975-0050

13

14    *Attorneys for Individual and Representative Plaintiff Carl Phillips*

15

16

17

18

19

20

21

22

23

24

25

26

27

28